UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LEWIS HARVEY, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   No. 2:13-cv-17-DBH |
| | ) |
| KNIGHT-CELOTEX, LLC, et al., | ) |
| | ) |
| Defendants | ) |

*RECOMMENDED DECISION ON MOTION TO SET ASIDE DEFAULT*

Defendants Knight-Celotex, LLC, Lisbon Falls Property, LLC, and Knight Industries, LLC, move to set aside the default entered against them on May 29, 2013, five days after they failed to timely answer plaintiff Lewis Harvey's complaint. *See* Defendants[] Knight-Celotex, LLC, Lisbon Falls Property, LLC and Knight Industries, LLC's Motion To Set Aside the Default ("Motion") (ECF No. 22); *see also* ECF Nos. 12-13. Plaintiff Lewis Harvey opposes the Motion. *See* Plaintiff's Brief in Opposition to Defendants' Motion To Set Aside the Default ("Opposition") (ECF No. 24). For the reasons that follow, I recommend that the Motion be granted.[1]

**I. Applicable Legal Standards**

The Motion implicates Federal Rule of Civil Procedure 55(c), pursuant to which "[t]he court may set aside an entry of default for good cause[.]" This court has observed: "Unlike the more stringent standard of 'excusable neglect' applied to a motion for relief from *final* judgments pursuant to Federal Rule of Civil Procedure 60(b), the 'good cause' criterion applied to motions

---

[1] The First Circuit has observed that "[i]t is not clear whether [a] Rule 55(c) motion to vacate [a] default could be regarded as a [non-dispositive] 'pretrial' motion" of the sort that a United States Magistrate Judge may decide, rather than tendering a recommended decision to an Article III judge. *Conetta v. National Hair Care Ctrs., Inc*., 236 F.3d 67, 74 (1st Cir. 2001). In an abundance of caution, therefore, I issue a recommended decision on the Motion.

1

to set aside entries of default is more liberal, setting forth a lower threshold for relief." *Snyder v. Talbot*, 836 F. Supp. 26, 28 (D. Me. 1993) (citations omitted) (emphasis in original). "This lower threshold is justified by the fact that an entry of default is a clerical act, and not a final judgment issued by the Court. It is also in keeping with the philosophy that, if at all possible, actions should be decided on their merits." *Id*. at 28-29 (citations omitted).

There is no mechanical formula for determining whether good cause exists, and courts may consider a host of relevant factors. *See, e.g., Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 3 (1st Cir. 2010). Factors typically considered include: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary[;] (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion." *McKinnon v. Kwong Wah Rest*., 83 F.3d 498, 503 (1st Cir. 1996). These factors are not "talismanic," and the court may consider others as well. *See, e.g., CJC Holdings, Inc. v. Wright & Lato, Inc*., 979 F.2d 60, 64 (5th Cir. 1992). Ultimately, the burden of demonstrating good cause is with the party seeking to set aside the default. *See, e.g., Indigo Am*., 597 F.3d at 3.

## II. Factual and Procedural Background

The plaintiff seeks compensation for injuries sustained on or about January 19, 2007, when he was securing a load on his truck in an uncovered outdoor location of the defendants' premises in Lisbon Falls, Maine. Complaint and Demand for Jury Trial ("Complaint") (ECF No. 1) ¶¶ 5, 7. He alleges that, while engaged in that activity under the direction of the defendants' agents, servants, and/or employees, "he suddenly and unexpectedly was caused to fall due to a dangerous and/or defective condition which existed on or about the outdoor walking and/or

2

loading surface[,]" sustaining serious and permanent injuries that included a compressed spinal fracture. *Id*. ¶¶ 7, 12.

The defendants are named insureds under a policy of insurance issued by American International Specialty Lines Ins. Co. ("AISLIC") to defendant Knights Industries, LLC, for the time period June 1, 2006, through June 1, 2007. Affidavit of Kim Register ("Register Aff.") (ECF No. 22-2), attached to Motion, ¶ 2. AIG Claims, Inc. ("AIG") is the claims administrator for the policy. *See* Motion at 8. AIG first received notice of this incident/claim on or about January 29, 2007, from Roger Fornier, Safety Supervisor for Knight Industries, LLC. Register Aff. ¶ 3. AIG opened a file on it. *Id*. On or about February 5, 2007, AIG received a letter of representation from Edelstein, Martin and Nelson of Philadelphia, Pennsylvania. *Id*. ¶ 4. However, there was no further activity over the next two and a half years, and AIG closed the file for lack of prosecution on or about October 23, 2009. *Id*.

On April 6, 2009, Knight-Celotex, LLC, and Knight Industries I, LLC, filed separate voluntary petitions for chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. *See* ECF No. 1, *In re Knight-Celotex, LLC*, No. 09-12200 (Bankr. N.D. Ill.); ECF No. 1, *In re Knight Indus. I, LLC*, No. 09-12219 (Bankr. N.D. Ill.). On April 8, 2009, the cases were consolidated. *See* ECF No. 15, *In re Knight Indus. I, LLC*. On June 11, 2009, the cases were converted to chapter 7, and Attorney Barry Chatz was appointed Trustee. *See* ECF Nos. 20-21, *In re Knight Indus. I, LLC*. The consolidated case, No. 09-12200, remains pending as of this date.[2]

---

[2] The defendants submit an affidavit of Kim Register, an AIG claims professional, in support of their Motion, and the plaintiff submits an affidavit of his counsel Alison Wholey in support of his Opposition. *See* Register Aff.; Affidavit of Alison A. Wholey in Opposition to Defendants' Motion To Set Aside the Default ("Wholey Aff.") (ECF No. 24-1), attached to Opposition. Register states that all of the defendants were involved in the bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Illinois, No. 09-12200. *See* Register Aff. ¶ 6. From the ECF docket for that court, I was able to confirm only that Knight Industries I, LLC, and Knight-
(*continued on next page*)

3

The defendants have ceased doing business, no longer exist, and have no employees, places of business, or working telephone lines. Register Aff. ¶¶ 6-7.

On or about March 16, 2010, AIG received a letter of representation from Hardy, Wolf and Downing, P.A., of Lewiston, Maine. *Id.* ¶ 5. According to Register, AIG's file was not reopened after receipt of that letter of representation due to a clerical error and/or oversight. *Id.*

On or about December 20, 2012, Wholey, the plaintiff's counsel and a partner in the law firm of Briggs and Wholey, LLC, called AIG. Wholey Aff. ¶¶ 1-2, 4. Wholey identified herself, stated that she represented Lewis Harvey, and gave the agent the plaintiff's claim number and date of injury. *Id.* ¶ 4. She was directed to call adjuster Paul Robinson and, thereafter, was told to call Richard Sands, described as a manager on the "commercial side" of AIG. *Id.* She was given a phone number, fax number, and mailing address for Sands. *Id.* She called Sands, but he did not call back. *Id.* She also faxed to Sands, and sent by regular mail, her letter of representation, in which she asked for copies of any statements obtained from her client and requested information about applicable liability coverage limits. *Id.* ¶¶ 4-5; Exhs. 1-2 to Wholey Aff. AIG did not respond to the letter of representation, and neither Sands nor anyone else from AIG returned Wholey's December 2012 calls. Wholey Aff. ¶¶ 6-7. According to Register, the file was not reopened after receipt of the Wholey letter of representation due to a clerical error and/or oversight. Register Aff. ¶ 5.

Mindful that the statute of limitations would run on January 18, 2013, and that the defendants were in bankruptcy, the plaintiff on January 10, 2013, filed a motion in the United States Bankruptcy Court for the Northern District of Illinois to modify the automatic stay "to sue

---

Celotex, LLC, filed for bankruptcy there. I find no mention of the third defendant, described by the plaintiff in his Complaint as "Lisbon Falls Property, LLC In Care of Knight Industries, LLC[.]" Complaint ¶ 4. Nonetheless, Wholey also states that all of the defendants were in bankruptcy. *See* Wholey Aff. ¶¶ 8, 15. For purposes of this Motion, I presume that to be the case.

the Debtor's insurance company on account of the injuries that [the plaintiff] received." Wholey Aff. ¶ 8; Motion of Lewis Harvey To Modify the Automatic Stay ("Motion To Modify Stay") (ECF No. 22-1), Exh. 1 to Motion, ¶ 14.  The plaintiff stated that (i) he would "limit his recovery to any insurance proceeds payable and ultimately paid by the insurance company[,]" (ii) he "agree[d] and stipulate[d] that he [would] not seek to collect his claim from the Debtor's estate[,]" and (iii) "[b]ased on the foregoing, the Trustee [Chatz] ha[d] consented to the requested relief."  Motion To Modify Stay ¶¶ 14-16.  The plaintiff reiterated, "Again [he] is not seeking a claim against the Debtor or its estate." *Id*. ¶ 26.  "Rather, he is looking only to name the Debtor as a nominal defendant so he can recover from its insurance company." *Id*.

On the same day, United States Bankruptcy Judge Pamela S. Hollis granted the agreed-upon order modifying the automatic stay, stating, in relevant part:

> . . . The automatic stay is modified for the benefit of Lewis Harvey ("Harvey") to allow him to bring suit against the Debtor's insurance company to recover for any claims that Harvey may have against the Debtor. . . .
>
> . . . To the extent that any suit Harvey brings requires naming the Debtor in a nominal capacity, this order authorizes Harvey to take such action.
>
> . . . Harvey agrees to forgo any distribution from the Debtor or its estate on account of any claim that he brings against the Debtor's insurer.

Agreed Order Modifying Automatic Stay (ECF No. 22-3), Exh. 3 to Motion.

The plaintiff filed this Complaint on January 15, 2013.  *See* ECF No. 1.  Copies of the Summons and Complaint were served on each of the defendants twice: once, on April 13, 2013, c/o James Knight of Sun Valley, Idaho, ECF Nos. 5, 6, & 7, and once, on May 7, 2013, c/o Barry A. Chatz, Trustee in Bankruptcy, by leaving copies with Jurate Medziak, an assistant of Arnstein & Lehr, Chicago, Illinois, ECF Nos. 9, 10, & 11

5

On April 18, 2013, at 6:53 p.m. the following message was left on the telephone answering machine of Briggs and Wholey, LLC:

> Uh ya this is for uh Alison Wholey. My name is Steven Towbin T O W B I N an attorney in Chicago . . . and I'm calling about a claim or a lawsuit you filed, uh, by Lewis Harvey against Knight-Celotex uh in the District Court in Maine. So uh give me a call uh tomorrow if you will thanks bye.

Wholey Aff. ¶¶ 12-13. Towbin did not send a letter of representation, enter an appearance, and/or file an answer to the Complaint. *Id*. ¶ 14.

AIG received no notice of the filing of the Complaint or of the service of the summonses and Complaint from either Knight or Chatz. Register Aff. ¶¶ 7-8. In the absence of such notice, AIG did not open the file, retain counsel on behalf of the defendants, or file responsive pleadings on their behalf. *Id*. ¶ 9.

By letter dated July 12, 2013, from the plaintiff's counsel, AIG received notice of the entry of default against the defendants. *Id*. ¶ 10. Upon confirming that the Complaint had in fact been served, Register retained counsel to represent the defendants under the terms of the insurance policy. *Id*. ¶ 11.

### III. Discussion

The burden of demonstrating good cause rests with the party seeking to set aside a default. *See, e.g., Indigo Am.*, 597 F.3d at 3. Weighing the *McKinnon* factors, I conclude that the defendants meet that burden.

1. **Whether the Default Was Willful.** The defendants contend that their default was not willful because (i) they no longer exist as business entities and are in bankruptcy, where their remaining collateral and cash are being used to satisfy the claims of creditors and, (ii) while the summonses and Complaint were served upon their former principal and the Bankruptcy Trustee, no one notified their insurer, from whose policy the plaintiff seeks to satisfy any

judgment obtained in this action. *See* Motion at 6. They add that, once AIG received notice of the existence of the lawsuit and the entry of a default against them, it acted quickly to obtain counsel and file the Motion. *See id.*

The plaintiff argues that (i) the court should focus on whether the defendants, not their insurer, which is not a party to this suit, willfully ignored the summonses and Complaint, (ii) the defendants utterly ignored this lawsuit and offer no explanation from those who were personally served, or their attorneys, for the default, and (iii) even if it is appropriate to credit to the defendants the excuse offered by their insurer, one can infer that AIG's conduct was willful because it failed to respond to several communications from the plaintiff's counsel in December 2012. *See* Opposition at 4-7. The plaintiff surmises that "AIG knew that the statute of limitations was about to expire, and gambled that if AIG remained silent, did not return Plaintiff's counsel's December 2012 telephone calls, and did not respond to Plaintiff's counsel's December 2012 letters it would be in the clear, judgment proof." *Id.* at 7.

In the circumstances presented, analysis properly focuses on the defendants' insurer. Judge Hollis lifted the automatic stay against the defendants and their bankruptcy estates specifically to allow the plaintiff to bring suit against *the insurer*. The plaintiff was permitted to sue the debtors, if necessary, only in a "nominal capacity" and only on the understanding that he agreed to forgo any recovery from them or their bankruptcy estates. In this context, the defendants' failure either to respond to the suit themselves or to notify AIG that suit had been filed against them does not evidence a willful default. The defendants might reasonably have assumed that they continued to enjoy the *de facto* protections of the automatic stay and that the plaintiff, who had sought and received relief from the automatic stay to sue their insurer, would himself take care to notify the insurer, even if not a named defendant, of the pendency of the suit.

*See, e.g., Pension Benefit Guar. Corp. v. Canadian Imperial Bank of Commerce*, No. 87 CIV. 1046 (MBM), 1989 WL 50171, at *3 (S.D.N.Y. May 8, 1989) (resolving doubts in favor of finding that defendant's action in delaying more than 19 months before acknowledging service of amended complaint was not willful when plaintiff led him to believe that he was not a target of investigation, for example, by assuring him after serving the amended complaint "that he was a mere nominal defendant"); *compare, e.g., In re Game Tracker, Inc.*, 746 F. Supp.2d 207, 217-18 (D. Me. 2010) (default deemed willful when defendant failed to file an answer or to file for bankruptcy before its answer was due).[3]

Nor can AIG's failure to defend be said to have been willful. Although it carelessly neglected to respond to the plaintiff's counsel's December 2012 communications or to reopen its file in this matter, "[c]ourts tend to view a default as 'willful' where it shows contempt for the *court's* procedures or an effort to evade the *court's* authority." *Lucerne Farms v. Baling Techs., Inc.*, 208 F.R.D. 463, 466 (D. Me. 2002) (emphasis added). The plaintiff's counsel's 2012 communications with AIG predated both the lifting of the automatic stay and the filing of this suit, and the plaintiff's counsel's letter to AIG dated December 20, 2012, did not disclose any intention to undertake either action. *See* Exhs. 1-2 to Wholey Aff. There is no evidence that anyone informed AIG that the suit had been filed until the plaintiff's counsel did so by letter

---

[3] This court has noted that a defendant's reliance on others, such as insurers, to address a complaint is not a compelling explanation for a default, and can even evidence a willful default, in circumstances in which the defendant has done nothing to determine if the third party is meeting the defendant's obligation. *See, e.g., McGarey v. York County*, 233 F.R.D. 220, 224 (D. Me. 2006); *Reynolds v. Bar Harbor Whale Watch Co.*, No. CIV. 00-102-B-H, 2001 WL 26205, at *2 (D. Me. Jan. 9, 2001) (rec. dec., *aff'd* Feb. 13, 2001). While it is true that in this case there is no evidence that the defendants took such steps, the defendants did remain, as a practical matter, subject to the protection of a bankruptcy automatic stay, with the plaintiff having sought and obtained relief from the stay specifically to sue their insurer and forgo any recovery from them.

dated July 12, 2013. AIG then promptly confirmed that the Complaint had been served, hired counsel, and filed the Motion on August 2, 2013.[4]

On these facts, AIG cannot fairly be said to have shown contempt for the court's procedures or an effort to evade its authority. *See, e.g., Parks v. Discount Box & Pallet, Inc.*, Civil Action No. 5:12cv081, 2013 WL 662951, at *8 (W.D. Va. Feb. 22, 2013) (defendant's insurer's cavalier handling of plaintiff's claim, including its failure to return phone calls or respond to emails, did not weigh in favor of a finding of willful default when, *inter alia*, the conduct occurred prior to the filing of suit).

2. **Whether Setting Aside Default Would Prejudice the Plaintiff**. The plaintiff identifies no prejudice in the event of the set-aside of the entry of default apart from the "prejudice to every plaintiff who comes before the Court, being required to follow the rules, but being confronted by Defendants who flouted their obligations to follow the rules, and then seek the court's indulgence." Opposition at 7. This is not a cognizable prejudice for the purposes of Rule 55(c) analysis. *See, e.g., Reynolds*, 2001 WL 26205, at *3 (plaintiff did not show prejudice "in any legal sense" when she had "not shown that the passage of time ha[d] caused witnesses to disappear or evidence to be lost, which would truly amount to prejudice").

3. **Whether a Meritorious Defense Is Presented**. The defendants contend that they have meritorious defenses to the plaintiff's claims, including but not limited to comparative negligence. *See* Motion at 7-8; *see also, e.g., Edes v. Fredson*, 344 F. Supp.2d 209, 213 (D. Me. 2004) ("[G]iven that Maine is a comparative negligence state, liability does not exist in a

---

[4] To the extent that the plaintiff speculates that, in December 2012, knowing that the statute of limitations was about to expire, AIG gambled that if it ignored the plaintiff's counsel's communications, "it would be in the clear, judgment proof[,]" Opposition at 7, I fail to see why AIG would have adopted such a strategy. Even assuming, *arguendo*, that AIG knew that the statute of limitations was about to expire, it also knew that the plaintiff was represented by counsel, who presumably would see to it that he filed his suit within the statute of limitations. Indeed, the plaintiff did so, notwithstanding AIG's pre-suit silence.

vacuum."); *Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, ¶ 21, 748 A.2d 961, 969 ("Under Maine's comparative negligence statute, the damages owing to a plaintiff may be reduced when the plaintiff's harm is partly the result of the plaintiff's own fault . . . . If the plaintiff's fault is equal to or greater than that of the defendant, the plaintiff cannot recover damages.") (citations omitted).

The defendants state that the plaintiff was instructed to position and unload his truck in a covered area and that the ladder and/or other equipment that he was using at the time of the accident did not belong to them. *See* Motion at 8. These facts, if proven at trial, could lead a reasonable fact-finder to conclude that the plaintiff and/or a third party were at least partially at fault for the accident that caused his injuries.

The plaintiff counters that a mere unsupported factual assertion, unaccompanied by documentation or an affidavit, falls short of demonstrating the existence of a meritorious defense. *See* Opposition at 5-6. However, to establish the existence of a meritorious defense for purposes of a Rule 55(c) motion, a defendant "need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." *Lucerne Farms*, 208 F.R.D. at 466 (citation and internal quotation marks omitted). The defendants have done so.

4. **The Nature of the Defendants' Explanation for the Default**. With respect to this factor, the defendants again direct the court's attention to the conduct of their insurer – the real party in interest – explaining that no one notified AIG of the entry of default or, indeed, of the pendency of the lawsuit, until July 2013, whereupon AIG promptly arranged for the filing of their motion set aside the default. *See* Motion at 6.

The plaintiff again urges the court to focus on the named defendants, whom he argues offer no plausible explanation for their default. *See* Opposition at 4-6. He adds that, to the

extent that it is appropriate to examine the insurer's conduct, AIG offers no satisfactory explanation for its failure to respond to the plaintiff's counsel's December 2012 letter and no explanation at all for its failure to return counsel's phone calls at that time. *See id*. at 6-7.

For the reasons discussed above, the proper focus in this case is on the conduct of AIG, not that of the defendants. AIG offers a satisfactory explanation for its failure to defend: that no one notified it that this lawsuit had been filed, let alone that the defendants had been defaulted, until July 2013, whereupon it promptly moved to secure counsel and file this motion to set the default aside. The fact that AIG failed to respond to communications from the plaintiff's counsel in December 2012, prior to the time this suit was filed, has no bearing on the legitimacy of its explanation for its post-suit inaction leading to the entry of default against the defendants.[5]

     5.    **Good Faith of the Parties**. The plaintiff argues that the defendants fail to offer a "good faith explanation" for their default. *See id.* at 4. In addressing whether the defendants' default was willful and the nature of their explanation for the default, I have already considered the arguments made in support of this assertion, and I reject them for the same reasons discussed above. In addition, while the defendants do not accuse the plaintiff of bad faith, *see generally* Motion, nor is any bad faith on his part apparent, it is troubling that he neglected to send a courtesy copy of the Complaint to the real party in interest, the insurer, even while taking the additional needless step of serving the summonses and Complaint a second time on the defendants on May 7, 2013, subsequent to receiving a telephone message from Towbin in

---

[5] By contrast, in *Henderson v. Atlantic Pelagic Seafood, LLC*, No. 2:10-cv-68-DBH, 2010 WL 4791890 (D. Me. Nov. 17, 2010) (rec. dec., *aff'd* Dec. 9, 2010), after considering the conduct of both a defendant and its insurer, this court declined to set aside the entry of a default in circumstances in which, *inter alia*, the (i) the defendant (which did not claim to have filed for bankruptcy protection) protested that it was a defunct entity incapable of acting willfully yet continued to exist for purposes of Delaware law because no certificate of cancellation had been filed, and (ii) the defendant's insurer was kept apprised of every major development in the plaintiff's lawsuit but chose not to hire counsel to defend its insured until three and a half months after the entry of default. *See Henderson*, 2010 WL 4791890, at *5-*6.

response to the earlier service of the summonses and Complaint. Weighing the equities, this factor tilts against the grant of the Motion.

  6.  **Amount of Money Involved**. The defendants state, and the plaintiff does not contest, that this case potentially involves a significant amount of money. *See* Motion at 8; *see generally* Opposition. Indeed, that appears to be the case. The plaintiff alleges that he sustained "serious and permanent injuries[,]" including a compressed spinal fracture, and seeks damages in excess of $75,000, including compensation for "a loss of earnings and/or earning capacity[.]" Complaint at 5 & ¶¶ 7, 12, 14.

  7.  **Timing of Motion**. The defendants filed the Motion on August 2, 2013, slightly more than two months after default was entered on May 29, 2013, and two weeks prior to a damages hearing scheduled for August 16, 2013. *See* ECF No. 15.[6] Nonetheless, as the defendants emphasize, *see* Motion at 8-9, AIG acted promptly upon learning of the pendency of this suit and the entry of default against the defendants. That weighs in favor of the grant of the Motion. *See, e.g., McGarey*, 233 F.R.D. at 223 (once default was discovered, "action was taken with reasonable promptness to have the default set aside[,]" weighing in favor of grant of motion); *Edes*, 344 F. Supp.2d at 212-13 (defendant promptly moved to set aside default upon learning for the request for default, militating in favor of grant of motion).

  **Totality of Factors**. Focusing on the conduct of the defendants' insurer, the real party in interest in this case, the *McKinnon* factors tilt in favor of granting the defendants' motion to set aside the default entered against them. Weighing those factors *in toto*, and bearing in mind that "it is a basic tenet of federal civil procedure that actions should ordinarily be resolved on their merits" and that, "[e]specially when the motion to set aside default arises early in the case, the

---

[6] The hearing was canceled upon the filing of the Motion. *See* ECF No. 23.

Court must resolve doubts in favor of a party seeking relief from the entry of default," *Lucerne Farms*, 208 F.R.D. at 465 (citations and internal quotation marks omitted), I recommend that the court grant the Motion.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendants' motion to set aside the default entered against them be **GRANTED** and that, should the court agree, the defendants be ordered to file an answer forthwith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of September, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge